# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**THELMA ANN PITTMAN**                                              **PLAINTIFF**

V.                                                           CASE NO. 2:20-cv-00093-KS-JCG

**ANDREW SAUL,** *Commissioner of*                                  **DEFENDANT**
*Social Security*

## REPORT AND RECOMMENDATION

Plaintiff Thelma Ann Pittman seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Having considered the submissions of the parties [11] [12] [13], the record, and relevant law, the undersigned concludes the Commissioner's decision should be affirmed because the administrative law judge (ALJ) applied 20 C.F.R. § 416.920c (2017) correctly, and substantial evidence supports his conclusion that Plaintiff's back condition does not prevent Plaintiff from performing light work with additional limitations.

## BACKGROUND

I.   Procedural History

Plaintiff alleged disability beginning on July 31, 2017, her fiftieth birthday, asserting an inability to work because of pain in her back, bipolar disorder, depression, and osteoporosis. [9] at 22. Plaintiff's application for SSI was denied. She requested a hearing before an ALJ. The ALJ heard Plaintiff's case, which included testimony from Plaintiff and a vocational expert. *Id.* at 65-86. The ALJ issued a

written decision on November 8, 2019, denying Plaintiff's claim. *Id.* at 15-35. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff filed this action for review under 42 U.S.C. § 405(g).

The parties agree that for applications filed on or after March 27, 2017, such as Plaintiff's, the Commissioner must apply 20 C.F.R. § 416.920c (2017), which is entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." Plaintiff argues the ALJ did not adhere to 20 C.F.R. § 416.920c because he did not articulate how he considered the factors found in paragraphs (c)(3) through (c)(5) of 20 C.F.R. § 416.920c, when comparing the opinions of state agency non-examining consultants with the opinion of Stanley Hartness, M.D., an examining consultant and internist.

In response, Defendant asserts the ALJ considered the required, two most important persuasiveness factors, supportability and consistency, and found Dr. Hartness' opinion unpersuasive. Defendant submits the ALJ's decision should be affirmed because the ALJ provided a detailed explanation when reconciling conflicting evidence and ultimately relied more on the most objective, recent documentation from Jefferson Neurology Clinic.

II.  Plaintiff's Testimony

Plaintiff testified as follows at the administrative hearing: She did not graduate from high school but obtained her general equivalency degree. [9] at 68. She worked as a retail assistant manager in 2006 for about seven or eight months, which included

loading and unloading trucks, stocking shelves, and working as a cashier. *Id.* at 70-71. Plaintiff worked as a retail assistant manager in 2013 and 2014, which included opening and closing a store, and reconciling the till. *Id.* at 71-73. At the time of the hearing, Plaintiff lived in a mobile home with her 33-year-old son, who owned the home. *Id.* at 80.

Plaintiff had back surgery in October 2017. [9] at 74. Titanium rods were place in her lower back. *Id.* She still experiences "[a] lot of pain" in her back, equating the pain to a level of "a five or a six" generally and "a nine" on a bad day. *Id.* Because of back pain, Plaintiff can sit for probably 15 or 20 minutes before having to stand and stand for 15 or 20 minutes before having to sit. *Id.* at 74-75. Because of back pain, Plaintiff can only walk for about 15 to 20 minutes, or about a half a block, and cannot lift over ten pounds. *Id.* at 75.

Plaintiff has bipolar disorder and a long history of depression. *Id.* at 76. Plaintiff was admitted for inpatient care in 2008 because she was suicidal. *Id.* Plaintiff cries two to three times a week for about forty minutes each time. *Id.* at 77. Plaintiff is not social. *Id.* She accompanies her son and/or his girlfriend to the store one or two days a week. *Id.* Plaintiff wakes up at 8 or 9 a.m. and spends her days watching television and reading. *Id.* at 80. One or two days a week, Plaintiff lies in bed. *Id.* at 77-78. Her bipolar disorder manifests in manic episodes at night that prevent her from sleeping. *Id.* at 78. These episodes occur twice a week. *Id.* After an episode, it takes Plaintiff three days to recover. *Id.* When she is manic, Plaintiff watches television or reads. *Id.* Plaintiff has little energy. *Id.*

Plaintiff takes all medication prescribed to her. *Id.* Plaintiff takes Percocet two times a day for pain, and Remeron and Seroquel for bipolar disorder, mania, and panic attacks. *Id.* at 79. Remeron and Seroquel help "a little bit." *Id.* Plaintiff can stay on task for about twenty-five minutes before her mind or back pain force her off task. *Id.* at 78. Plaintiff does not perform household chores and attributes this to both back pain and her mental condition. *Id.* at 81.

III. <u>Five-factor Sequential Process</u>

The ALJ utilized the five-factor sequential process found in 20 C.F.R. § 404.1520 and concluded that Plaintiff was not disabled under the Social Security Act's definition. A claimant meets the Act's definition of disability if: (1) the claimant is not presently engaged in substantial gainful activity; (2) the claimant has a severe, medically determinable, physical or mental impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities and meet the duration requirement; (3) the claimant's impairment or combination of impairments meets or equals an impairment contained in the listings of impairments of Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1; (4) if disability cannot be found based on a listing in Appendix 1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant from doing any other work, considering the claimant's RFC, age, education, and past work experience. The claimant has the burden through the first four steps. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Once the claimant shows her or she can no longer perform his or her previous

work, the burden shifts to the Commissioner to show that there is other work existing in significant numbers in the national economy that the claimant can perform. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the Commissioner meets the burden at step five, the claimant must then prove she is not able to perform other work. *Id.*

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 3, 2017. [9] at 17. At step two, the ALJ found Plaintiff suffered from the following severe impairments: "osteoporosis, status post L4-5 fusion, anxiety, and bipolar disorder (20 CFR 416.920(c))." *Id.* at 17. The ALJ determined Plaintiff's "allegation of osteoarthritis of the knee, heart problems, and degenerative changes of the cervical spine, non-alcoholic fatty liver disease, early cirrhosis, portal hypertension, grade 2 separation of the left shoulder, and renal cysts are not 'severe'." *Id.*

At step three, the ALJ found Plaintiff did not meet the standard of a listed impairment. *Id.* at 19. Before step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b)

> except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. There is to be no more than occasional climbing of ramps, stairs, or ladders, but no climbing of ropes or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can never work at unprotected heights, operate a motor vehicle, or work around moving mechanical parts such as in a warehouse setting with forklifts or large machinery moving around the warehouse floor. She can have no more than occasional exposure to dust, fumes, and pulmonary irritants, and vibration. She can occasionally work in an area with moderate noise. She is able to perform simple, routine tasks and can deal with simple changes in work settings. She is able to make simple work related

5

decisions and can have occasional interaction with supervisors, coworkers, and the public.

*Id.* at 21.

At step four, with the use of vocational expert testimony, the ALJ decided Plaintiff could not perform her past relevant work as a retail sales manager, cashier checker, and warehouse worker, as actually or generally performed. *Id.* at 33-34. The ALJ, with the use of vocational expert testimony, found Plaintiff capable of performing the following light, unskilled representative occupations: router, routing clerk, and order caller. *Id.* At step five, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date of July 31, 2017, through November 8, 2019, the date of the ALJ's decision. *Id.* at 35.

## ANALYSIS

I. <u>Standard of Review</u>

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. See 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Supreme Court recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence ... is more than a mere scintilla. It means - and means only - such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The ALJ has the sole responsibility for determining a claimant's disability status at the hearing level. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990); 20 C.F.R. § 416.946(c).

II.  Analysis

Because Plaintiff filed her claim after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. § 416.920c (2017). Under this regulation, the ALJ must articulate in the decision, "how persuasive [he or she found] all of the medical opinions and all of the prior administrative findings . . . ." 20 C.F.R. § 416.920c. Plaintiff alleges the ALJ was required to articulate how he considered all persuasiveness factors found in 20 C.F.R. § 416.920c(c)(1) through (5)

when evaluating Dr. Hartness' opinion. [13] at 4. The five factors for determining persuasiveness are found in 20 C.F.R. § 416.920c(c)(1) through (5):

(1) Supportability

(2) Consistency

(3) Relationship with the claimant (which includes)

    a. Length of the treatment relationship
    b. Frequency of examinations
    c. Purpose of the treatment relationship
    d. Extent of the treatment relationship
    e. Examining relationship

(4) Specialization

(5) Other factors

The factors of supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(b)(2). The ALJ generally is not required to articulate how he or she considered the factors in (c)(3) through (c)(5) because 20 C.F.R. § 416.920c(b)(2) provides, "We may, but are not required to explain how we considered the factors in paragraphs (c)(3) through (c)(5) . . . ." "[I]t is not administratively feasible for [the Social Security Administration] to articulate in each determination or decision how [the Commissioner] considered all the factors for all of the medical opinions and prior administrative findings in [a claimaint's] case record." 20 C.F.R. § 416.920c(b)(1). The ALJ's responsibility to articulate how he or she considered the factors in (c)(3) through (c)(5) arises only as follows:

> When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will

>articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 416.920c(b)(3).

Plaintiff contends that because the ALJ found Dr. Hartness' opinion and the state agency non-examining consultants' opinions "in equipoise (in terms of consistency and supportability)," the ALJ was required to articulate his consideration of the factors in paragraphs (c)(3) through (c)(5) to "break the tie." [11] at 9. However, applying the plain language of 20 C.F.R. § 416.920c(b)(3), a duty to consider the factors in paragraphs (c)(3) through (c)(5) did not arise because the ALJ did not find Dr. Hartness' opinion regarding Plaintiff's work-related limitations well-supported, nor did he find state agency non-examining consultants' opinion regarding Plaintiff's work-related limitations well-supported. Because the ALJ did not find that two or more medical opinions or prior administrative medical findings about the same issue were both equally well-supported and consistent, the ALJ was not required to articulate in his decision how he considered the factors in paragraphs (c)(3) through (c)(5). *See MacCollister v. Comm'r of Soc. Sec. Admin.*, No. CIV-19-382-JFH-KEW, 2021 WL 1134304, at *3 (E.D. Okla. Mar. 9, 2021), report and recommendation adopted, 2021 WL 1134809 (E.D. Okla. Mar. 24, 2021); *McClain v. Saul*, No. 1:20-CV-00111-LLK, 2021 WL 918761, at *3 (W.D. Ky. Mar. 10, 2021); *Kara D. v. Saul*, No. 20-CV-1020-EFM, 2021 WL 168773, at *4 (D. Kan. Jan. 19, 2021); *Serowski v. Comm'r of Soc. Sec.*, No. 1:19-CV-2761, 2020 WL 6383187, at *12 (N.D. Ohio Oct. 30, 2020).

The ALJ explained that Dr. Hartness' opinion regarding Plaintiff's work-related abilities was unsupported by Dr. Hartness' own examination records, as well as more recent records from Jefferson Neurology Clinic. [9] at 33. The ALJ found the state agency non-examining consultants' opinions also unsupported by the treatment records from Jefferson Neurology Clinic. *Id.* Plaintiff alleges the ALJ's assertion that Dr. Hartness' opinion was not supported by his own examination findings is "simply not accurate," and the ALJ's position that the Jefferson Neurology Clinic's records contain evidence undermining the opinions of Dr. Hartness and the state agency non-examining consultants is "simply false." However, it is not the Court's role to reconsider facts, reweigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Greenspan,* 38 F.3d at 237. The Court's function is to determine whether the ALJ supported his factual determinations with substantial evidence.

The ALJ considered the findings of Dr. Hartness and the records from Jefferson Neurology Clinic showing Plaintiff demonstrated tenderness in her mid and lower back with a decreased range of motion and positive straight leg-raising test bilaterally. [9] at 32-33, 1443-50. The ALJ considered x-rays, magnetic resonance imaging, and surgery records. The ALJ included restrictions in the RFC to account for Plaintiff's mid and lower back tenderness and decreased range of motion, concluding Plaintiff had the RFC

> to perform light work as defined in 20 C.F.R. § 416.967(b) except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. There is to be no more than occasional climbing of ramps,

stairs, or ladders, but no climbing of ropes or scaffolds. She can occasionally stoop, kneel, crouch, and crawl.

[9] at 21.

In finding no further restrictions necessary to accommodate for Plaintiff's mid and lower back tenderness and decreased range of motion, the ALJ emphasized that Dr. Hartness' October 2018 physical examination showed Plaintiff's muscle strength was 4/5 in the bilateral upper and lower extremities, and 2019 physical examinations at Jefferson Neurology Clinic showed Plaintiff's strength was normal throughout her bilateral upper and lower extremities, with no muscle wasting or atrophy, no muscle fasciculation, tremors, rigidity, or bradykinesia. *Id.* at 33, 1446-50. The ALJ highlighted findings from Jefferson Neurology Clinic showing Plaintiff's deep tendon reflexes were symmetrical, sensation was intact throughout Plaintiff's bilateral upper and lower extremities, Plaintiff's gait was normal for a person of Plaintiff's age, Plaintiff's ambulation was normal, and Plaintiff used no walking aids. *Id.* at 32-33, 1446-50.

The ALJ devoted pages of his decision to discussing additional evidence beyond the records from Dr. Hartness, Jefferson Neurology Clinic, and the state agency non-examining consultants, that the ALJ found relevant to Plaintiff's reported problems with her lower back. *Id.* at 26-29. The ALJ made numerous references to Plaintiff's opiate misuse, repeated medical visits requesting narcotics and early refills, refusal to participate in physical therapy sessions, and history of refusing pain treatment that was not narcotic medication. *Id.* at 23-31. The ALJ emphasized that "[a] check of PMP data revealed the claimant had seen at least 19 physicians in the last 12

11

months scattered from Tupelo to Meridian, Columbus, Tuscaloosa, and Birmingham from whom she had received prescriptions for opiates and benzodiazepines." *Id.* at 26, 472. The ALJ noted Dr. Raymond Overstreet, a psychiatrist, indicated in September 2017 that Plaintiff's main problem was drug addiction. *Id.* at 25, 563.

The ALJ summarized more than eleven emergency room visits by Plaintiff in February 2016, August 2016, November 2016, December 2016, February 2017, March 2017, April 2017, August 2017, June 2018, July 2018, August 2018, and January 2019. In August 2016, Plaintiff reported falling and resulting back pain, but there was no tenderness, range of motion was normal, and Plaintiff provided conflicting information about the mechanism of her fall. *Id.* at 778-79. In February 2017, Plaintiff had a normal ambulatory status and was able to move all her extremities within a normal range of motion. *Id.* at 400. In April 2017, Plaintiff reported falling and requested something for pain but was observed "sitting straight up on the [emergency department] bed, feet on floor while experiencing tremors and slurred speech. [Patient] states it does not bother her to sit this way." *Id.* at 469. In August 2017, Plaintiff reported falling and resulting back pain. *Id.* at 621. She became agitated and chose to leave when told she would not be given a narcotic pain shot. *Id.* at 621. In January 2019, Plaintiff denied back, joint, and muscle pain and had a normal range of motion and strength with no tenderness or swelling. *Id.* at 1365.

In sum, the ALJ articulated why he found the consultants' opinions regarding Plaintiff's work-related limitations unpersuasive. The ALJ highlighted largely normal physical examinations during the period of alleged disability to support the

factual determination that Plaintiff's back condition did not prevent Plaintiff from performing light work with additional limitations. Plaintiff has not shown reversible error based on the physical RFC.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed and Plaintiff's appeal dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

13

**SIGNED,** this the 1st day of July, 2021.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE